**Armando SILVA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 04–97–00970–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 23, 1998.

Rehearing Overruled Feb. 5, 1999.

Discretionary Review Refused
April 21, 1999.

Before ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice and PAUL W. GREEN, Justice.

## OPINION

CATHERINE STONE, Justice.

Armando Silva was convicted by a jury for delivery of a controlled substance. He appeals his conviction by contending that the evidence was factually and legally insufficient, that certain evidence was improperly admitted, and that the prosecutor improperly commented on his failure to testify. He also argues that he was assessed a sentence greater than that prescribed by law. Because we find Silva's points of error are without merit, we affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Armando Chapa and Roland Casarez, two undercover officers, approached Silva at his job at a tire shop in Pearsall, Texas. Chapa and Casarez were accompanied by Matthew Arrebalo, an informant. The officers offered to purchase some cocaine from Silva, but they agreed instead to meet later at Silva's house. Chapa, Casarez, and Arrebalo met Silva at his house and Chapa again asked Silva to sell him some cocaine. Silva allegedly sold Chapa less than one gram of cocaine wrapped in two small tinfoil packets.

### SENTENCING

Silva argues that the judgment of conviction provides for an illegal sentence. The first judgment indicates that Silva's punishment is "10 years T.D.C. probated" and the second indicates "5 years T.D.C. probated." Silva correctly notes that under TEX. PEN.CODE ANN. § 12.35 (Vernon 1994) the maximum sentence for delivery of a controlled substance (a state jail felony) is two years imprisonment and a fine not to exceed $10,000 (if a deadly weapon was not involved or the defendant had not been previously convicted of a felony). The State concedes that Silva should have only been sentenced to a maximum of two years imprisonment but argues that the record does in fact reflect this punishment and that any ambiguity is due to a clerical error. The State suggests

Grady L. Roberts, Jr., Law Office of Grady L. Roberts, Jr., Pearsall, for Appellant.

Lynn Ellison, District Attorney, 81st Judicial District, Reynaldo Padilla Morin, Assistant District Attorney-81st Judicial Dist., Jourdanton, for Appellee.

that we simply reform the judgment accordingly. Silva contends that this court does not have all the information necessary to correct the judgment and the court should reverse and remand to the trial court for the proper sentence.

The powers of the appellate courts to reform judgments include reformation of whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *See Floyd v. State,* 914 S.W.2d 658, 663 (Tex.App.—Texarkana 1996, pet. ref'd). *See also* TEX.R.APP. P. 43.2(b)–(c) (allowing the court to modify the trial court's judgment and affirm it as modified). A *nunc pro tunc* order may be used to correct clerical errors in a judgment, but may not be used to correct judicial omissions. *Ex parte Dopps,* 723 S.W.2d 669, 670 (Tex. Crim.App.1986). *See* TEX.R. CIV. P. 316. An error is clerical if no judicial reasoning was involved. *State v. Bates,* 889 S.W.2d 306, 309 (Tex.Crim.App.1994). The purpose of such an order is to correctly reflect from the records of the court the judgment actually "rendered" but which for some reason was not "entered" at the proper time. *Jones v. State,* 795 S.W.2d 199, 201 (Tex.Crim.App. 1990). Therefore, before a judgment *nunc pro tunc* may be entered or recorded, there must be proof that the proposed judgment was actually rendered at an earlier time. *See id.*

The record indicates that the trial judge recognized that the correct range of punishment was 180 days to two years imprisonment. Some of the parties' confusion results from the fact that the clerk's record provides for two judgments of conviction. In the second, the court apparently corrects the first. While the cover sheet on the second judgment is at best ambiguous ("5 yrs. T.D.C. probated"), the written portion explains that the court "fixed the punishment of the defendant at two years in the state jail facility . . . [but the defendant] is placed on community supervision for five years. . . ." Thus, the judgment of conviction contains the correct sentence and the record contains proof that the judgment actually rendered sentenced Silva to two years in the state jail facility but

placed him on community supervision for five years. Under TEX.R.APP. P. 43.2, we reform the judgment accordingly in an effort to remove any ambiguity.

### COMMENT ON THE FAILURE TO TESTIFY

Silva contends that during jury selection, the prosecutor made several comments on Silva's choice not to testify. These comments informed the jurors that they could judge Silva's credibility if he chose to testify and that Silva was not required to testify. The prosecutor asked a prospective juror if he would give Silva "Brownie points" for testifying. After several objections the court instructed the jury that under the Fifth Amendment, Silva has an absolute right not to testify, and that the jury should not consider it in any way. The prosecutor further explained that the jury could not hold Silva's choice not to testify against him and could also not give him "Brownie points" if he did choose to testify.

It is well settled that the prosecution may not comment on the accused's failure to testify. *Hogan v. State,* 943 S.W.2d 80, 81 (Tex.App.—San Antonio 1997, no pet.). Such a comment offends both State and Federal Constitutions. *Nickens v. State,* 604 S.W.2d 101, 104 (Tex.Crim.App.1980). Whether a comment is improper is determined from reviewing the statements from the jury's perspective. *Hogan,* 943 S.W.2d at 82. A statement is a direct comment on a defendant's failure to testify if it references evidence that only the defendant can supply. *Id.*

In this case, the prosecutor's comments were an attempt to instruct the jury on how to treat Silva's decision to testify or not to testify. Notably, in instructing the jury, the prosecutor did not misstate the law. She indicated only that the jury should not look unfavorably upon the defendant if he chose not to testify, nor favorably if he did choose to testify. *See Godfrey v. State,* 859 S.W.2d 583, 585 (Tex.App.—Houston [14th Dist.] 1993, no pet.) (holding that where a prosecutor had misstated the law the appellate court must conduct a harmless error analysis). The court also cured any error by informing the jury about the confines of the Fifth

Amendment and by instructing them that if the defendant chose not to testify, the jury should not consider it in any way. *See Cates v. State*, 752 S.W.2d 175, 176 (Tex.App.—Dallas 1988, no pet.) (holding that even where the court sustained defense counsel's objection to the prosecution's comment on defendant's failure to testify any error was cured and rendered harmless by the court's instruction to disregard).

▬ Additionally, the objectionable comments occurred during voir dire. A comment "which occurs prior to the time testimony in the case had closed cannot be held to refer to a failure to testify which has not yet occurred." *Reynolds v. State*, 744 S.W.2d 156, 159–60 (Tex.App.—Amarillo 1987, pet. ref'd). *See also McCarron v. State*, 605 S.W.2d 589, 595 (Tex.Crim.App.1980); *Hogan*, 943 S.W.2d at 82. In *Sanders v. State*, 963 S.W.2d 184, 190 (Tex.App.—Corpus Christi 1998, pet. ref'd), the prosecutor, during voir dire, presented the panel with hypothetical reasons why a defendant might not want to testify (such as family loyalty, fear of drug dealers, or that he was guilty). Even though the appellant did not preserve error, the court held that because the statements were made during voir dire there was no error as the defendant had not yet invoked his right. *Sanders*, 963 S.W.2d at 190. *See also Campos v. State*, 589 S.W.2d 424, 426 (Tex.Crim.App.1979) (holding that because the prosecutor had no way of knowing whether the defendant would in fact testify, no error was committed by the prosecution for commenting during voir dire on defendant's failure to testify).[1]

The same analysis holds true in the present case. The prosecutor had no way of knowing whether Silva would testify, nor did she indicate Silva's possible reasons for choosing not to testify, nor did she misstate the law. Thus, no error was committed. Silva's second point of error is overruled.

## ADMISSIBILITY OF THE EVIDENCE

▬ In point three, Silva contends that the two small tinfoil packages were improperly admitted because the person who received them could not identify them. In point six, he argues that the alleged drugs were improperly admitted because the chain of custody was fatally defective due to the officers' inability to identify the packets and the lack of identifiable characteristics on the packets.

Officer Chapa's testimony at trial reveals that after Silva sold him the two packets wrapped in tinfoil, Chapa placed the packets in a matchbox and kept them on his person. Later, he placed the packets in his glove compartment and locked it. No one else handled the packets or had a key to the compartment. When he removed the packets from the glove compartment, Chapa placed them in a plastic baggie which he marked with a specific task force case number and then placed the baggie in an envelope which he also marked with his initials and the date. He then sent the envelope to the Texas Department of Public Safety Laboratory. Chapa also testified that he received the baggie and the packets from the lab in a sealed envelope that was opened in his presence. The evidence was then brought to trial. Silva points out that Chapa did not mark the tinfoil packets themselves, and although he testified that he was very certain that these were the same packets, he could not be absolutely certain.

▬ While the Rules of Evidence do not specifically address the chain of custody issue, Rule 901(a) states that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims. *Simmons v. State*, 944 S.W.2d 11, 12 (Tex.App.—Tyler 1996, pet. ref'd); TEX.R. EVID. 901(a). Rule 901, however, does not require the State to *prove* anything,

---

1. At oral argument, counsel for appellant contended that the holding in *Campos* turned on the appellant's failure to object to the improper comment. However, in that case, counsel failed to object only in regards to the second point of error. *See Campos*, 589 S.W.2d at 427. Under Campos' first point of error, the court clearly held that even where counsel had objected to the prosecutor's improper comments made during voir dire such comments did not constitute error where State's counsel had no way of knowing whether the defendant would testify. *See id.* at 426.

but only requires a showing that satisfies the trial court that the matter in question is what the State claims. *Garner v. State,* 939 S.W.2d 802, 805 (Tex.App.—Fort Worth 1997, pet. ref'd). Thus, proof of chain of custody goes to the weight rather than the admissibility of the evidence. *Id.* Absent evidence of tampering or commingling, theoretical breaches in the chain of custody do not affect its admissibility. *Cuba v. State,* 905 S.W.2d 729, 735 (Tex.App.—Texarkana 1995, no pet.). The court of appeals reviews the admissibility of evidence under an abuse of discretion standard. *See Garner v. State,* 848 S.W.2d 799, 803 (Tex.App.—Corpus Christi 1993, no pet.).

Here, the State claims that the tinfoil packets are the same packets that Silva sold to Officer Chapa. The State introduced evidence sufficient for the trial court to determine that the packets did contain cocaine and that Chapa had bought these same packets from Silva. After obtaining the packets from Silva, no one else touched the packets, the baggie and envelope were marked appropriately, the evidence was sent to the laboratory, and Chapa received the evidence back in a sealed envelope. Silva introduced no affirmative evidence that any tampering occurred.

Silva relies on *Garner v. State,* 848 S.W.2d at 799, a case where the identifying officer could not testify that the evidence was the same material obtained from the appellant. In *Garner,* an officer found a syringe on the appellant during an investigatory search. *See id.* at 800. The syringe was left unguarded and was not immediately placed in a container or tagged, but was eventually tagged and sent to a lab in an envelope. *See id.* at 803. The syringe had no identifiable markings on it. *See id.* The lab returned the syringe in a different package and the officer did not remember if the syringe was returned with any identification. *See id.* The court concluded that the State failed to prove that the syringe was the same syringe found on the appellant by identifiable characteristics, identification tags, or testimony about the syringe's whereabouts or activities from the time the officer mailed the syringe to the lab to the time the officer received an

unidentified syringe in return. *See id.* Thus, the trial court abused its discretion by admitting testimony about the syringe. *See id.*

In the present case, the evidence was not left unguarded. It was either on Chapa's person or locked in his glove compartment. While the packets were not tagged, Chapa kept them with him until he placed them in a marked baggie. They were returned from the lab in that same container. Thus, the exhibits were proved up by identifiable characteristics, identification tags, and testimony about their whereabouts from the time the evidence was seized to the time it was received back from the lab. Simply because Officer Chapa could not be "absolutely" certain that the packets were the exact same packets he bought from Silva does not mean that they were improperly admitted into evidence. This theoretical flaw in the chain of custody goes to the weight not the admissibility of the evidence. Thus, we hold that the trial court did not abuse its discretion in admitting the packets into evidence as the testimony was sufficient to establish the proper chain of custody.

### SUFFICIENCY OF THE EVIDENCE

When reviewing the factual sufficiency of the evidence, the appellate court views the evidence without the prism "of in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). The appellate court should be appropriately deferential to the factfinder's determination so as to avoid substituting the appellate court's decision for the jury's. *Id.* at 133; *De Los Santos v. State,* 918 S.W.2d 565, 569 (Tex.App.—San Antonio 1996, no pet.).

Evidence that supports Silva's innocence includes the officers' testimony on cross-examination that they could not be absolutely certain that the packets were the same packets purchased from Silva or recall other details about the events of the day. Silva introduced no witnesses and no exhibits. Evidence that supports the prosecution's

case includes the officers' testimony that Silva sold the packets to Chapa and the laboratory supervisor's testimony that the packets did in fact contain cocaine. The evidence viewed equally to both parties, without the prism of in the light most favorable to the prosecution, is sufficient to support the jury verdict. Silva's fourth point of error is overruled.

Reviewing the evidence for legal sufficiency, the appellate court will consider the evidence in the light most favorable to the verdict. *Clewis,* 922 S.W.2d at 129. The appropriate inquiry is whether, after viewing the evidence in this light, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garner v. State,* 939 S.W.2d at 805. This standard applies to both direct and circumstantial evidence cases. *See Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App. 1986); *Rodriguez v. State,* 970 S.W.2d 66, 68 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd). The verdict will be overturned only if it is irrational or unsupported by proof beyond a reasonable doubt. *Garner,* 939 S.W.2d at 805–06. *See also Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

To be guilty of delivery of a controlled substance, the jury must find that the defendant intentionally and knowingly manufactured, delivered, or possessed with the intent to manufacture or deliver a controlled substance in Penalty Group 1 (such as cocaine) of less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp.1998). As noted, officers testified that Silva sold the drugs to Chapa of his own free will and the lab supervisor testified that the packets did contain less than one gram of cocaine. Reviewing the evidence in the light most favorable to the verdict, we do not conclude that the verdict is irrational or that a rational trier of fact could not have found the elements of the crime beyond a reasonable doubt. Silva's fifth point of error is overruled.

The judgment of the trial court is affirmed.