COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ADAN ROMERO                                                 )

A/K/A:  ADAN SALAS ROMERO,                     )               No.  08-00-00511-CR

                                                                              )

Appellant,                          )                    Appeal from the

                                                                              )

v.                                                                           )               
205th District Court

                                                                              )

THE STATE OF TEXAS,                                     )           
of El Paso County, Texas

                                                                              )

Appellee.                           )                
(TC# 980D02608)

                                                                              )

 

O
P I N I O N

 

Adan Salas Romero appeals his conviction for capital
murder.  He raises two issues.  First, that the trial court committed error
by excluding exculpatory evidence. 
Second, the trial court erred by allowing the prosecution to present
evidence of other crimes, wrongs, or acts. 
We affirm.








Richard Bracknell was murdered in the El Paso County jail.  Appellant, the victim, and several others
were housed in cell block 430, which was designated specifically for members
and associates of the Mexican Mafia gang. 
Appellant and Mr. Bracknell were members of
this statewide prison gang.  The
organizational structure of the gang is paramilitary.  The highest ranking member in cell block 430
was Richard Castillo, a Alieutenant@ and the Atank
boss.@  Appellant was a sergeant, and next in rank behind
Mr. Castillo.  Other members of the gang
in cell block 430 were Jose Castillo, Eddie Compean,
Eddie Cummings, Efrain Alvarez, and Eric Gomez. 
The non-gang members in cell block 430 included Jose Salcido,
Frank Acosta, Ruben Cazares, and Raul Herrera.

During the early
morning hours in December 1994, Mr. Bracknell was
strangled to death inside a cell.  He was
attacked and killed by other members of the Mexican Mafia.  Richard Castillo strangled Mr. Bracknell with a sock while the others held him down.  Appellant, armed with a shank, stood guard
outside the cell.  Afterwards, the body
was carried to the shower.  Blood from
cell No. 4 was cleaned with rags, socks, and shirts.  These items were then washed in or flushed
down the toilets.  Richard Bracknell=s
body was found by the guards later that morning and his jail identification
bracelet was found in Appellant=s
cell.

Appellant and six
other gang members were indicted for capital murder for their role in the
killing of Richard Bracknell.  Appellant was tried by a jury and found
guilty.  The State did not seek the death
penalty so the trial court automatically sentenced Appellant to life
imprisonment.

Appellant=s issues on appeal are all related to
the admission or exclusion of evidence therefore the standard of review as to
each matter is abuse of discretion.  See
Levario v. State, 964 S.W.2d
290, 296 (Tex.App.--El Paso 1997, no
pet.).  The trial court=s rulings should be sustained on appeal
if correct on any theory of law applicable to the case.  Weatherred v. State, 975 S.W.2d 323, 323 (Tex.Crim.App.
1998).  As long as the trial court=s ruling was within the zone of
reasonable disagreement, the decision will be upheld.  Montgomery v. State, 810 S.W.2d 372,
391 (Tex.Crim.App. 1990)(Opin. on reh=g); Levario,
964 S.W.2d at 297.








In Issue One,
Appellant complains the trial court twice erred by excluding exculpatory
evidence.  In particular, Appellant
complains of the exclusion of Richard Bracknell=s housing history while he was in
jail.  He argues this evidence would have
shown other persons in the jail had a motive to kill Mr. Bracknell.  Appellant also complains of the exclusion of
testimony by a former employee of the Department of Public Safety crime
lab.  He contends this testimony would
have established that blood from someone other than the victim was found on
some of the evidence collected from the crime scene.  

Evidence
of a Third Party=s
Motive

Evidence regarding
a third party=s motive
to commit a crime with which a defendant is charged is generally
inadmissible.  Spence
v. State, 795 S.W.2d 743, 754-55 (Tex.Crim.App.
1990); Jones v. State, 825 S.W.2d 529, 532 (Tex.App.--Fort
Worth 1992, pet. ref=d).  An exception exists if the defendant can
produce other evidence linking the third person to the crime.  Id. 
Such evidence must demonstrate the third party=s
opportunity to commit the crime, while also incriminating that person as the
culprit.  Spence,
795 S.W.2d at 754-55; Jensen v. State, 66 S.W.3d 528, 537 (Tex.App.--Houston [14th Dist.] 2002, pet. ref=d).








During
cross-examination of Officer Steven Elliott, the defense elicited testimony
regarding Mr. Bracknell=s
cell block assignment history.  Officer
Elliott=s
testimony established that Mr. Bracknell had been
moved at least eleven times during a six month period prior to being placed in
cell block 430.  Outside the presence of
the jury, Appellant argued he should be allowed to show why Mr. Bracknell was moved from each cell.  The court allowed Appellant to conduct a voir dire examination of Mr. Elliott for that purpose.  The officer then explained why Mr. Bracknell had been moved in each instance.  His testimony indicated Richard Bracknell had problems with other inmates because he was a
sex offender and had bossed others around. 
As a result, he had been assaulted more than once and placed in
administrative segregation for his own protection.  Officer Elliot also testified Mr. Bracknell was supposed to be segregated from two particular
inmates, and had claimed to have problems with a third.  He also stated that Mr. Bracknell had not housed with, nor had any problems with
Appellant prior to his move into cell block 430.

At the conclusion
of the voir dire examination, Appellant urged the
court to allow the same line of testimony before the jury.  Defense counsel argued the testimony would
show Mr. Bracknell had problems with everyone in
jail prior to moving into cell block 430. 
The defense theory was that Mr. Bracknell was
safe in cell block 430 until certain individuals were housed there.  Appellant argued Mr. Bracknell=s problems were not with him, but
rather with non-member associates of the Mexican Mafia.  Appellant argued the victim=s classification as a sex offender put
him in danger because other inmates wanted to Aget
a jacket on him.@

The court agreed
to allow Appellant to question Officer Elliot generally about why inmates are
moved within the jail.  However, the
trial court would not allow Appellant to question the officer about the
specific reasons Mr. Bracknell was moved each
time.  The court also specifically
overruled Appellant=s request
to question Officer Elliot about Richard Bracknell=s Ajacket.@ 
In so doing, the trial court noted the officer did not have personal
knowledge of this information.  Then, in
the presence of the jury, Appellant continued to question Officer Elliot about
Mr. Bracknell=s
moves within the jail.  The testimony
included an explanation that inmates were placed in administrative segregation
for their own protection or for medical reasons.  Defense counsel failed to further question
the officer about the general reasons an inmate might be moved.  On redirect examination, Officer Elliott
agreed there were a variety of reasons why people are transferred within the
jail.








During the defense=s case-in-chief, Officer Elliott was recalled
to the stand outside the presence of the jury and questioned again about the
jail records related to Richard Bracknell.  Again, the defense questioned the officer
about each time Mr. Bracknell was moved within the
county jail.  Officer Elliott=s testimony was related to jail
documents indicating the dates of and reason for each move.  At the conclusion of the questioning, defense
counsel offered the jail records into evidence. 
The State objected, arguing the purposes behind each move constituted
impermissible character evidence of the victim. 
The State also maintained the evidence was hearsay and irrelevant.  The trial court sustained the objection on
the basis of the State=s
arguments.








Despite the
arguments of defense counsel at trial and Appellant on appeal, nothing in the
record supports Appellant=s
theory that a different inmate or group of inmates murdered Richard Bracknell.  Moreover,
Appellant=s
insistence that the jail records, if admitted, would have shown other persons
in the jail had a motive to kill Mr. Bracknell is not
supported by the record.  We recall that
evidence of a third party=s
motive to commit a crime is generally inadmissible.  Spence, 795 S.W.2d
at 754-55; Jones, 825 S.W.2d at 532.  We see no evidence that demonstrates a third
party=s opportunity
to commit the crime or incriminates a third party as the culprit.  Spence, 795 S.W.2d
at 754-55; Jensen, 66 S.W.3d at 537.  Appellant argues the non-gang members may
have been responsible for the murder. 
However, Officer Elliott did not mention any of those individuals in his
testimony.  Only three inmates were
mentioned by name and those individuals were not housed in cell block 430.  Simply put, Appellant failed to establish the
requisite link between a third party and the crime.  Spence, 795 S.W.2d
at 754-55.  Nor do we believe this
necessary link would have been made even if the jail records were in
evidence.  Appellant failed to meet the
requirements of Texas law as established by Spence v. State.  Accordingly, we find nothing to suggest the
trial court abused its discretion in excluding the jail records of Richard Bracknell.  Levario, 964 S.W.2d at 296.  This portion of Appellant=s first issue is overruled.  

Exclusion
of Evidence Absent Establishing A Chain of Custody

Appellant also
contends the trial court erred by not allowing testimony by Barbara Elizando, a Department of Public Safety lab technician,
regarding the testing of bloodstains found on clothing allegedly collected from
cell block 430.  Appellant argues Ms. Elizando=s
testimony would have established that some of the blood on some of the clothing
collected from cell block 430 did not match that of Richard Bracknell.  He asserts such testimony would have
contradicted the impression left by the prosecution that clothes stained with
Mr. Bracknell=s
blood were found in all the toilets.  








During trial, the
State called Sonia Vega, the case agent in charge of the investigation for the
El Paso County Sheriff=s
Department, to testify.  Detective Vega
testified that part of her duties as case agent included directing the work of
an identification and records technician at the crime scene.  She explained she was responsible for
deciding what evidence should be gathered or photographed.  She also determined what other things needed
to be collected, measured, or observed at the scene.  Once these decisions were made, Detective
Vega gave instructions to the identification and records (AID&R@)
technician, Sherri Diaz, who then actually collected and photographed the
evidence.  Testimony indicated clothing
worn by the cell mates at the time the victim=s
body was found was taken, bagged, and inventoried.  The inmates were then given new sets of
clothes.  The ID&R technician, also collected
other evidence from cell block 430, including stained clothing.  The only jail cell in which blood stains were
found in the cell itself was cell No. 4. 
All other blood evidence was collected from outside the cells, clothing
or other objects.  All the evidence was
sent to the Department of Public Safety for testing.  As case agent, Detective Vega requested the
types of tests to be performed on each piece of evidence.  According to her testimony, by the time the
results of the tests were available, she was no longer with the same division
or an investigator on Appellant=s
case.  Detective Vega therefore never
received the results and was not aware of any findings or conclusions reached
as a result of the lab testing.  She
stated she had no knowledge of who actually received the results and who or if
another detective had been subsequently assigned to the case.

Through the
testimony of Detective Vega, a number of photographs were admitted into
evidence.  Some of the photographs
depicted clothing in the toilets or sinks of the cell block.  Some of the clothing appeared to have
bloodstains on it.  A piece of sock that
was wrapped around Mr. Bracknell=s neck and used to strangle him was
also admitted into evidence through her testimony.

Detective Vega
also indicated that some members of cell block 430 had new injuries on their
bodies the morning Mr. Bracknell=s body was discovered.  She testified that Eddie Compean
had two fresh scratches above his right eye brow.  Joe Castillo also had small cuts on his
knuckles and some red abrasions on his face. 
There was also testimony about a fight which had occurred in the cell
block a few days before the murder.  On
cross-examination of Detective Vega, defense counsel suggested through his
questioning that if blood evidence collected from cell block 430 was not that
of Richard Bracknell then it could be attributed to
someone involved in the fight rather than the murder.








The defense later
called former Department of Public Safety lab technician Barbara Elizondo to testify. 
Ms. Elizondo was called out of the presence of
the jury in order to determine if her testimony would be admissible.  Defense counsel questioned Ms. Elizondo about Defense Exhibit 21, a lab report she had
prepared relating to evidence in Appellant=s
case.  She testified that some of the
items submitted for testing were stained with blood that did not match that of
Richard Bracknell. 
Based on this testimony, defense counsel offered the report into
evidence.  

The prosecution
objected to Ms. Elizondo=s
testimony and admission of the lab report into evidence.  The State argued, inter alia, that none of the items mentioned in the report
were in evidence and no chain of custody or link had been established between
items collected at the scene of Mr. Bracknell=s murder and those tested by Ms. Elizondo as reflected in the proferred
report.  The trial court agreed and
disallowed the testimony of Ms. Elizondo before the
jury and admission of the lab report into evidence.  In so doing, the court acknowledged that the
evidence the defense sought to bring before the jury might be admissible if the
proper predicate was first laid.








Sonia Vega was
then recalled for voir dire examination by the
defense.  She acknowledged that Defense
Exhibit 21, the lab report prepared by Ms. Elizondo,
contained information about evidence collected from cell block 430.  However, the examination revealed that
Detective Vega did not collect the evidence from the scene, package the items
into containers, or send the items to the Department of Public Safety for
testing.  Moreover, she was not present
at these times either.  She expressly
testified she had no personal knowledge of the contents of the containers sent
to the DPS lab.  In fact, she was not
even certain who had been responsible for packaging and sending evidence once
it had been collected by the ID&R technician.  Her testimony clearly indicated that persons
from the ID&R unit had been responsible for maintaining the chain of custody
on the evidence from the time it was collected until it was actually sent to
DPS for testing.

At the conclusion
of Detective Vega=s
examination, the trial judge told defense counsel her ruling on Ms. Elizondo=s
testimony and the lab report had not changed. 
The court specifically indicated the defense still needed to fill an
evidentiary gap.  Defense counsel then
indicated they would later call Sherri Diaz, the ID&R technician, to
testify.  However, Ms. Diaz was not
called to testify and the defense rested and closed without presenting any
other witnesses or evidence.  

Appellant now
contends the court=s
exclusion of Barbara Elizondo=s
testimony was erroneous.  He further
maintains Ms. Elizondo=s
testimony would have provided exculpatory evidence.  At trial and on appeal, he has argued the
absence of testimony by Sherri Diaz should have affected the weight given
rather than the admissibility of the evidence. 









Texas Rule of
Evidence 901(a) provides that A[t]he
requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.@  Tex.R.Evid. 901(a).  To admit the results of scientific testing, a
proper chain of custody must be established. 
Smith v. State, 450 S.W.2d 92, 94 (Tex.Crim.App. 1970); Avila v. State, 18 S.W.3d 736,
739 (Tex.App.--San Antonio 2000, no pet.).  Minor theoretical breaches in the chain of
custody go to the weight rather than to the admissibility of evidence.  DeLeon v. State, 505 S.W.2d 288, 289 (Tex.Crim.App.
1974); Stone v. State, 794 S.W.2d 868, 870 (Tex.App.--El
Paso 1990, no pet.).  Proof of the
beginning and end of the chain of custody will support the admission evidence
absent proof of tampering, alteration, or commingling.  Hall v. State, 13
S.W.3d 115, 120 (Tex.App.--Fort Worth 2000), pet.
dism=d, improvidently granted, 46 S.W.3d
264 (Tex.Crim.App. 2001); Silva v. State, 989
S.W.2d 64, 68 (Tex.App.--San Antonio, pet. ref=d). 
The Court of Criminal Appeals has explained that tagging an item of
physical evidence at the time of its seizure and then identifying it at trial
based upon the tag is sufficient to establish the proper chain of custody.  Lagrone v. State, 942 S.W.2d 602, 617 (Tex.Crim.App.
1997); Stoker v. State, 788 S.W.2d 1, 10 (Tex.Crim.App.
1989), disapproved on other grounds, Leday
v. State, 983 S.W.2d 713 (Tex.Crim.App. 1998); Garcia
v. State, 537 S.W.2d 930, 934 (Tex.Crim.App.
1976).  Thus, the chain of custody
is conclusively proven if an officer testifies that he or she seized the item
of physical evidence, put an identification mark on it, placed it in the
property room, and then retrieved the item being offered on the day of
trial.  Stoker,
788 S.W.2d at 10; Elliott v. State, 450 S.W.2d 863, 864 (Tex.Crim.App. 1970). 
We review a trial court=s
decision to admit or exclude evidence under Rule 901(a) under an abuse of
discretion standard.  Silva, 989
S.W.2d at 68; Garner v. State, 848 S.W.2d 799, 802 (Tex.App.--Corpus
Christi 1993, no pet.).








In this instance,
Appellant sought to admit testimony and a lab report relating to blood evidence
found on certain items in cell block 430. 
The items themselves were not admitted into evidence.  The person or persons involved in collecting
the evidence, tagging it for identification purposes and sending it to the lab
for testing did not testify at trial.  As
a result, there was no proof of the beginning and end of the chain of custody
on evidence described in the lab report. 
See Stoker, 788 S.W.2d at 10; Garner,
848 S.W.2d at 802-03.  As indicated by
the trial court, the defense would have been best served by calling Sherri Diaz
to testify in order to bridge the evidentiary gap and meet the requirements of
Rule 901(a).  The defense failed to do
so.  As such, the trial court=s decision to exclude the testimony of
Barbara Elizondo and the lab report was not an abuse
of discretion.[1]  Silva, 989 S.W.2d at
68; Garner, 848 S.W.2d at 802-03. 
Appellant=s first
issue is overruled in its entirety.

EVIDENCE
OF OTHER CRIMES

Appellant=s second issue asserts the trial court
erred by allowing the State to present evidence of other crimes, wrongs, or
acts.  In particular, Appellant argues
the court erred in admitting evidence that he was incarcerated for capital
murder at the time he participated in the killing of Richard Bracknell.  He also
contends the court should not have allowed the State to present evidence about
the illegal activities of the Mexican Mafia prison gang.  Similarly, he complains of the admission of
the gang=s Aconstitution@
into evidence.  In each instance,
Appellant asserts the court erroneously admitted improper character
evidence.  








At the time
Richard Bracknell was murdered, Appellant
was in jail on a charge of capital murder. 
After the instant crime, but before indictment, Appellant was acquitted
of the capital murder offense for which he was originally jailed.  Prior to trial, Appellant filed a pretrial
objection to the admission of evidence indicating he had been incarcerated for
capital murder when housed in cell block 430. 
The trial court did not rule on Appellant=s
objection.  Rather, the court made a
limited ruling that the State would be allowed to read the entirety of the
indictment to the jury, including language indicating he had been incarcerated
for capital murder at the time of Richard Bracknell=s murder.

During trial, two
separate witnesses testified to the fact that Appellant was confined to the
Detention Facility on charges for capital murder.  In both instances, the defense failed to
object to the testimony.  Because
Appellant failed to obtain a ruling on the pretrial objection to the admission
of this evidence and further failed to object at the time evidence was offered
at trial, he has failed to preserve his complaint for appellate review.  Tex.R.App.P. 33.1(a).  Appellant=s
objection alone is not enough to preserve the complaint for review.  Tex.R.App.P. 33.1(a).  Failure to obtain an adverse judicial ruling
and object to the evidence when offered at trial results in waiver of this
complaint on appeal.  Tex.R.App.P. 33.1(a); Martinez
v. State, 17 S.W.3d 677, 686 (Tex.Crim.App.
2000).  Accordingly, this portion
of Appellant=s second
issue is overruled.

Appellant also
argues the trial court erred by allowing the State to present evidence of the
illegal activities of the Mexican Mafia prison gang.  Prior to trial, Appellant filed a motion in limine to exclude from trial any evidence of or reference
to his membership in the gang.  The State
maintained that presentation of such evidence was necessary in order to prove
an element of the charged offense.  

Appellant was
indicted for capital murder on the basis that he committed murder with the
intent to participate in or maintain a combination.  The indictment read in part:

ADAN ROMERO, hereinafter referred to as
Defendant, did then and there intentionally and knowingly cause the death of an
individual, namely:  RICHARD BRACKNELL while
the said Defendant was incarcerated in a Penal Institution, to-wit:  The El Paso County Detention Facility, and
the said Defendant murdered the said RICHARD BRACKNELL with intent to
establish, maintain or participate in a combination composed of said
Defendant, and two or more other individuals, namely:  RICHARD MORALES CASTILLO, EDDIE CUMMINGS, JOE
POMPA CASTILLO, ERIC GOMEZ, EFRAIN ALVAREZ, or EDDIE COMPEAN . . . .  [Emphasis added].








After a hearing on the matter, the
trial court denied Appellant=s
motion, ruling the prison-gang evidence was an element of the charged
offense.  

At trial, three
witnesses testified about the nature and activities of the Mexican Mafia.  Detention Officer Steven Elliott told the
jury the gang was involved with illegal drugs and assaults on inmates within
the jail.  Detention Officer Manuel Marquez
expressly stated that the Mexican Mafia members housed in cell block 430 had
been engaged in criminal activities, including assaults on officers and other
inmates.  Appellant failed to object to
the testimony of both Officer Elliott and Officer Marquez.  Detective James Nance then testified as a
prison-gang expert.  He explained the
Mexican Mafia was a predatory prison gang with members throughout the Texas
prison system.  He indicated the gang
itself was a criminal organization.  The
purpose behind the gang was to control the environment inside the prison
system.  He further explained the gang
was governed by an organizational constitution which expressly states the
Mexican Mafia is a criminal organization with responsibility to commit crimes
to further the goals of the organization. 
Based on this testimony, a copy of the constitution was later admitted
into evidence.

On appeal,
Appellant contends testimony about the Mexican Mafia and the admission into
evidence of the organization=s
constitution was improper.  He argues
this evidence of crimes, wrongs, or bad acts constituted improper character
evidence under Rule 404(b).  He also
complains that the trial court failed to conduct the requisite balancing test
under Rule 403.








Chapter 71 of the
Texas Penal Code governs the offense of engaging in organized criminal
activity.  Tex.Pen.Code Ann. ' 71 (Vernon 2003).  Under Section 71.02, a person commits an
offense if, Awith the
intent to establish, maintain, or participate in a combination or in the
profits of a combination . . . he commits or conspires to commit . . .@ one or more of several enumerated
crimes, including murder.  Tex.Pen.Code Ann. ' 71.02(a).  The term Acombination@ is defined as Athree
or more persons who collaborate in carrying on criminal activities.@ 
Tex.Pen.Code Ann. ' 71.01(a).  In order to prove a defendant=s conduct meets this definition of Acombination,@
the State must prove a continuing course of criminal activities committed over
a period of time.  Nguyen
v. State, 1 S.W.3d 694, 696-97 (Tex.Crim.App.
1999); Mast v. State, 8 S.W.3d 366, 369 (Tex.App.--El
Paso 1999, no pet.).  Proof that a
defendant and others committed or conspired to commit a single offense is not
sufficient to prove participation in a Acombination.@ 
Id.

In this case, the
indictment required the State to prove Appellant murdered Richard Bracknell in order to establish, maintain, or participate
in a criminal combination.  Consequently,
evidence of the ongoing criminal activities of the combination, in this case
the Mexican Mafia, does not constitute improper character evidence.  This evidence was not extraneous to the
charge against Appellant, but rather a necessary element in proving his
participation in criminal combination. 
Rule 404(b) simply does not apply in this instance.








Appellant also
complains that the trial court failed to conduct a Rule 403 balancing test to
determine whether the danger of undue prejudice outweighs the probative value
of the evidence.  Under Rule 403 there is
a presumption that the probative value of relevant evidence exceeds any danger
of unfair prejudice.  McFarland
v. State, 845 S.W.2d 824, 837 (Tex.Crim.App.
1992).  Moreover, a trial court
may exercise discretion in excluding evidence only when the probative value of
the evidence is substantially outweighed by the danger of unfair
prejudice.   Tex.R.Evid. 403.  The greater the State=s
need to prove extraneous offenses in order to establish a material issue in the
case, the higher the probative value of such evidence in relation to its
potential for prejudice.  Crank v.
State, 761 S.W.2d 328, 344 (Tex.Crim.App. 1988); Willis
v. State, 932 S.W.2d 690, 697 (Tex.App.--Houston
[14th Dist.] 1996, no pet.).  The trial
court is not required to articulate its reasoning or the results of its
balancing test on the record.  Rojas v. State, 986 S.W.2d 241, 250 (Tex.Crim.App.
1998).  Rather, there is a
presumption that the court has engaged in the required balancing test once a
party lodges a Rule 403 objection and the court makes its ruling.  See Rojas, 986 S.W.2d at 250
(no error when trial court listened to defendant=s
Rule 403 objections and then overruled them); Santellan
v. State, 939 S.W.2d 155, 173 (Tex.Crim.App.
1997).  This presumption stands unless
the record indicates otherwise.  Id.

Here, there is
nothing in the record to suggest the court failed to conduct the required
balancing test.  Rojas, 986 S.W.2d at 250. 
Additionally, we find nothing to suggest the court abused its discretion
in admitting evidence of the Mexican Mafia=s
criminal activities and its constitution despite Appellant=s objection under Rules 403 and
404.  The trial court=s rulings clearly fall within the zone
of reasonable disagreement.  Montgomery,
810 S.W.2d at 391; Levario,
964 S.W.2d at 297.  Appellant=s second issue on appeal is overruled.

Finding no merit
to Appellant=s issues
on appeal, we affirm the judgment of the trial court.

 

June
18, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
We note that the lab report itself apparently indicated the evidence tested was
collected during the investigation of this case from cell block 430.  Though the trial court=s
decision to exclude the report in the absence of testimony from the ID&R
technician was certainly within the zone of reasonable disagreement, other
courts would have ruled otherwise.  One
begins with the principle that all relevant evidence is generally admissible.  Tex.R.Evid. 402.  Accordingly, the exclusion of evidence on hypertechnical grounds does not advance the interests of
justice.