Opinion issued March 4, 2004

















In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01173-CR




JOSHUA REDALE JEFFERSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 906087




MEMORANDUM OPINION
          Appellant, Joshua Redale Jefferson, was found guilty by a jury of the felony
offense of delivery of a controlled substance, cocaine, following his plea of not guilty.
The jury found true that appellant had two prior felony convictions as enhancing
factors. The jury assessed his punishment at confinement for 33 years. Appellant,
in five points of error, asserts that the evidence is legally and factually insufficient to
support his conviction, that he received ineffective assistance of counsel at the
guilt/innocence and punishment stages of trial, and that the prosecutor committed
fundamental error at the punishment stage by improperly applying parole law to
appellant. We affirm.
BACKGROUND
          On March 19, 2002, Officer Kimberly King of the Houston Police Department
was working in an undercover capacity to purchase narcotics from Darlene Cannedy. 
King phoned Cannedy and requested $100 worth of crack cocaine. Cannedy stated
that she did not have it and asked King to call her back. When King called her back,
Cannedy stated that she still did not have the drugs, but could take King to get some. 
As a result of this call, King went to Cannedy’s apartment, picked her up, and started
driving to find Cannedy’s friend, to whom Cannedy referred as “J.” Initially,
Cannedy instructed King to go to a motel off of Highway 59. “J” was not present at
the motel, so they went to a “Stop N Go” at the corner of Gessner and Westpark. 
King took this opportunity to call her surveillance team and tell them that she was all
right. After waiting at the “Stop N Go” for a while, Cannedy made a phone call and
told King that they should go to Score’s, a nearby cabaret. Cannedy then made
another phone call and afterwards instructed King to drive around to the other side
of the store, where “her boy” was going to come.
          After parking on the other side of the store, Cannedy and King waited for a
few minutes. King observed a male walking toward them, whom Cannedy indicated
was the person she was expecting. King identified appellant as the person she saw
walking toward the car. Cannedy left the vehicle and had a conversation with
appellant, but King could not hear what was said. Both appellant and Cannedy then
entered the car, Cannedy in the front passenger seat and appellant in the backseat. 
King positioned herself so she could see both Cannedy and appellant. While sitting
in the backseat, appellant gave Cannedy a paper towel, which she took and opened
up. King testified that she saw what appeared to be crack cocaine inside the towel
and that appellant told Cannedy that the crack cocaine was still “wet” and had just
been “cooked.” Cannedy gave appellant some money and then both appellant and
Cannedy exited the vehicle. They spoke for a few minutes, and then appellant walked
away to the south and Cannedy got back into the car. King drove a short distance
before she was pulled over by a Precinct 5 officer. When Cannedy saw the police,
she hid the crack cocaine in a Lay’s potato chip bag. Both King and Cannedy were
arrested, and King told the officers where to find the crack cocaine. 
          Officer Cory Riggs was providing surveillance for King. After appellant left
King’s car, Riggs was able to keep sight of him as he walked away. Riggs testified
that he was able to provide patrol officers with a brief description of the man before
he followed King’s vehicle.


 The patrol officers were pulling into the parking lot as
Riggs left, but Riggs did not see appellant arrested. Appellant was arrested by an
Officer Whang. King was later driven over to where appellant was arrested and
identified him as the person who had gotten into her car.
          Riggs went to the site where Cannedy and King were arrested and searched
King’s car. He found a substance that he believed to be crack cocaine wrapped in a
tissue inside of a potato chip bag. A field test that he performed showed a positive
result for cocaine. He testified that he placed the substance in a bag, initialed the bag,
and placed it and a submission slip into the laboratory lockbox.
          Cannedy testified for the defense. She stated that she did get in the car with
King, but that she never received a phone call about a drug purchase. She claimed
to be walking to the “Stop N Go” when King called her by her nickname and asked
her where she was going. Cannedy stated that she thought King was flirting with
someone. Cannedy testified that she did not know King, but King mentioned
Cannedy’s cousin’s name so Cannedy entered the car and asked King to take her to
the “Stop N Go.” Cannedy asserted that she made some purchases at the store, and
that the police stopped them on the way back from the store for speeding. Cannedy
testified that she did not know appellant, never discussed drugs or purchasing drugs
with him, had not been handed a paper towel with crack cocaine in it, and had not
placed the paper towel into a potato chip bag. Cannedy claims she was asked to get
out of the car because the officer claimed there was a warrant out on her for a traffic
ticket. She stated that there was not a warrant on her because she had just gotten out
of state jail. Cannedy testified that she had pled guilty to possession of a controlled
substance in connection with this episode because she was afraid that she would get
more time if she did not. She also testified that she believed the drugs were probably
planted by the officers.
DISCUSSION
Legal and Factual Sufficiency
          Appellant, in his first and second points of error, asserts that the evidence was
legally and factually insufficient to support his conviction. Specifically, appellant
argues that the evidence was legally insufficient because the State failed to establish
a chain of custody linking appellant to the cocaine and that the evidence was factually
insufficient because a reasonable trier of fact could not have concluded beyond a
reasonable doubt that appellant intentionally and knowingly delivered a controlled
substance, as alleged in the indictment.
          The State contends that appellant waived his legal and factual sufficiency
challenges because he failed to move for a directed verdict and also failed to present
legal and factual sufficiency challenges in his motion for new trial, thus failing to
preserve these points for appellate review under rule 33.1(d) of the Rules of Appellate
Procedure. It is well settled that the legal sufficiency challenges need not be
preserved. See Rankin v. State, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001). 
Furthermore, this court has held that a claim regarding factual sufficiency of the
evidence need not be preserved in the trial court in a criminal case. See Washington
v. State, No. 01-02-00926-CR, slip op at 11-12, 2003 WL 22456200, at *5 (Tex. App.
—Houston [1st Dist.] Oct. 30, 2003, pet. filed)
Standard of Review
          The standard for reviewing the legal sufficiency of the evidence is whether,
after reviewing the evidence in the light most favorable to the verdict, any rational 
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979). 
When reviewing for factual sufficiency, we review all the evidence, both favorable
and unfavorable, and set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong. King v. State, 29 S.W.3d 556, 563
(Tex. Crim. App. 2000). Under the factual sufficiency standard, we ask “whether a
neutral review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof.” Id. (quoting from Johnson v. State, 23 S.W.3d 1, 11 
(Tex. Crim. App. 2000)). We will reverse the fact finder’s determination only if “a
manifest injustice has occurred.” King, 29 S.W.3d at 563 (quoting from Johnson, 23
S.W.3d at 12).
Legal Sufficiency
          In his first point of error, appellant asserts that the State failed to prove a chain
of custody that would link him to the crack cocaine. Specifically, appellant argues
that the State failed to identify the cocaine seized by Riggs as the cocaine delivered
by appellant. Appellant asserts that the chain of custody for the cocaine did not lead
into the laboratory and that Riggs did not testify that he retrieved the item for trial,
so the evidence is legally insufficient to establish that appellant was delivering a
controlled substance.
          The chain of custody is conclusively established if an officer testifies that he
seized the item of physical evidence, tagged it, placed an identifying mark on it,
placed it in evidence storage, and retrieved the item for trial. Lagrone v. State, 942
S.W.2d 602, 617 (Tex. Crim. App. 1997). When evidence is sent to a laboratory for
analysis, the proponent must introduce testimony showing that the laboratory handled
the evidence in the same way to conclusively establish the chain of custody. See
Medellin v. State, 617 S.W.2d 229, 232 (Tex. Crim. App. [Panel Op.] 1981). When
the State completes the chain of custody from the initial collection of the evidence to
inside the laboratory, most questions concerning care and custody, including gaps and
minor theoretical breaches, go to the weight of the evidence, not its admissibility. See
Medellin, 617 S.W.2d at 232; Silva v. State, 989 S.W.2d 64, 68 (Tex. App.—San
Antonio 1998, pet. ref’d).
          Riggs testified that he recognized the substance he recovered out of the potato
chip bag as State’s exhibit one and noted that it still had a little bit of tissue mixed
inside of the base chunk. He identified the cocaine based on its appearance and his
initials and handwriting on the bag in which the cocaine was submitted to the lab. 
Riggs further testified that it did not appear that the bag had been tampered with and
the crack cocaine was in the same or similar condition as when he saw it last. Riggs
stated that after he bagged the crack cocaine, it went to the narcotics lockbox and
from there to the narcotics laboratory. Once the evidence reached the lockbox, it was
taken to the centralized evidence receiving department and given a unique laboratory
number. Dr. Shrey Reach, the forensic chemist who tested the sample after it was
assigned to her, testified that she recognized the crack cocaine from the unique
laboratory number and from her initials. She also testified that after a chemist
receives the evidence, she seals it in her cabinet until the day that she has to analyze
it. King testified that she transported the crack cocaine from the laboratory to the
courtroom in which appellant was tried. Appellant offered no evidence to indicate
any tampering with the evidence.
          The State established the chain of custody from the initial seizure to the
laboratory lockbox and from the inside of the laboratory to the courtroom. Appellant
presents no evidence suggesting that the crack cocaine was tampered with and
primarily argues that the record is unclear as to who gained possession of the
evidence from the evidence lockbox, labeled it, and took it to Reach. A rational trier
of fact could have considered this a minor breach, if any, in the chain of custody and
could have found the essential elements of the offense beyond a reasonable doubt. 
We overrule appellant’s first point of error.
Factual Sufficiency
          In his second point of error, appellant argues that the evidence was factually
insufficient to support his conviction for delivery of a controlled substance. He
asserts that the evidence shows a strong possibility that he was arrested by mistake. 
Specifically, appellant points to testimony from King that she did not recall some
aspects of the appearance of the person delivering drugs, namely, that she did not
remember the length of his hair or whether he had a beard, was missing some teeth,
was wearing glasses, or was wearing a cap. Appellant also suggests that, since
neither Riggs nor King actually saw the arrest and the only description given to the
patrol officers was that the suspect was a black male wearing a white shirt, the patrol
officers arrested appellant by mistake because the suspect could have entered the
store or could have otherwise evaded the view of the patrol officers between the time
of Riggs’s description and appellant’s arrest. Further, appellant points to the
testimony of Cannedy that she had met appellant, but did not know him or have
dealings with him and that she had never delivered a controlled substance to
appellant. Appellant also argues that, because the arresting officer was not called to
testify, there was a possibility of misidentification, because there could have been
more than one black male wearing a white shirt near the “Stop N Go.”
          King testified that appellant was the person who delivered the crack cocaine
to Cannedy. King identified appellant both at trial and a short period after her arrest. 
Riggs also identified appellant at trial. Riggs testified that he was leaving the parking
lot of the “Stop N Go” as the patrol officers were entering, suggesting that any break
in surveillance was not an extended one. The jury is free to believe or disbelieve all
or part of a witness’s testimony. Cain v. State, 958 S.W.2d 404, 409 (Tex. Crim.
App. 1997). Given all the evidence as a whole, we do not find that this verdict is so
weak as to be clearly wrong or manifestly unjust, nor do we find that the jury’s
finding is against the great weight and preponderance of the evidence. We overrule
appellant’s second point of error.
Ineffective Assistance of Counsel 
          Appellant, in his third point of error, asserts that he received ineffective
assistance of counsel during the guilt/innocence phase when counsel did not do the
following: (1) properly object to the chain of custody, (2) file a motion to suppress
an illegal arrest, (3) file a motion for independent expert analysis of the controlled
substance, (4) file a motion for independent quantitative analysis of the controlled
substance, and (5) file a motion for continuance to secure the presence of the arresting
officer and appellant’s witness, George Hawkins, at trial. Appellant, in his fourth
point of error, asserts that he received ineffective assistance of counsel at the
punishment phase when his trial counsel did not to object to the prosecutor’s
improper application of parole law.
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). See Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999);
Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986); Gamble v. State, 916
S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Appellant must show
that (1) counsel’s performance was so deficient that he was not functioning as
acceptable counsel under the Sixth Amendment, and (2) but for counsel’s error, the
result of the proceedings would have been different. Strickland, 466 U.S. at 687, 104
S. Ct. at 2064; Thompson, 9 S.W.3d at 812; Gamble, 916 S.W.2d at 93. 
          It is the defendant’s burden to prove ineffective assistance of counsel. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Gamble, 916 S.W.2d at 93. A
defendant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy. Strickland, 466 U.S. at
689, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813; Gamble, 916 S.W.2d at 93. 
          In the present case, the record is silent as to why appellant’s trial counsel did
not object to the chain of custody or file the various motions appellant asserts should
have been filed in the guilt/innocence phase. The record is also silent as to why
appellant’s trial counsel did not object to what he asserts was the prosecutor’s
misapplication of parole law in the punishment phase. Appellant has failed to rebut
the presumption that these actions were part of appellant’s trial counsel’s sound trial
strategy. To find that trial counsel was ineffective based on the asserted grounds
would call for speculation, which we will not do. See Jackson v. State, 877 S.W.2d
768, 771 (Tex. Crim. App. 1994); Gamble, 916 S.W.2d at 93. We overrule
appellant’s third and fourth points of error.
Prosecutorial Statements
          Appellant, in his fifth point of error, asserts that the prosecutor committed
fundamental error by improperly applying parole law to appellant at punishment. 
Appellant points generally to the prosecutor’s reading of appellant’s criminal record
along with remarks made by the prosecutor pertaining to how appellant committed
crimes shortly after leaving incarceration as being an attempt to invite the jury to
consider appellant’s eligibility for parole before sentencing him.
          Permissible jury argument falls within one of four categories: summation of the
evidence, reasonable deductions from the evidence, answer to argument of opposing
counsel, and pleas for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex.
Crim. App. 1992).
          Despite appellant’s assertions, the prosecutor’s remarks do not appear to be an
attempt to invite the jury to consider appellant’s eligibility for parole in sentencing.
The prosecutor appears to be making a summation of the evidence concerning
appellant’s criminal record. While the prosecutor did comment on how quickly
appellant was back on the streets committing crimes after his sentences, this is linked
to appellant’s criminal offenses and an argument that appellant will repeat this
pattern. This is not prosecutorial misconduct. We overrule appellant’s fifth point of
error. 
CONCLUSION
We affirm the judgment of the trial court. 
 
                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Justices Nuchia, Alcala, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).