11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Alfred Castellon Lopez

Appellant

Vs.                   No. 11-04-00048-CR -- Appeal
from Midland County

State
of Texas

Appellee

 

The jury convicted appellant, Alfred Castellon
Lopez, of delivery of a controlled substance, to-wit: heroin, and assessed his
punishment at confinement in the Institutional Division of the Texas Department
of Criminal Justice for a term of 20 years.[1]  The jury also imposed a fine of $10,000
against appellant. Appellant raises eight issues on appeal.  We affirm. 


Officer Seth Herman of the Midland Police
Department testified that he purchased heroin from appellant on August 30,
1999, while working as an undercover narcotics officer. [2]  Appellant was not arrested at the time of the
transaction because Officer Herman was conducting a Abuy/walk@ investigation in hopes of identifying
the source of the heroin. Dennis Hambrick, a criminalist/chemist with the Texas
Department of Public Safety (DPS) crime laboratory in Midland, testified that
his analysis of the substance which Officer Herman purchased from appellant
confirmed the presence of heroin. 
Hambrick additionally testified that the substance weighed .54
grams.  








Appellant attacks Hambrick=s
qualifications to testify as an expert in his first issue.  He contends that the trial court erred in
overruling his objection that Hambrick=s
testimony did not satisfy the requirements for scientific evidence under Daubert
v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kelly v.
State, 824 S.W.2d 568 (Tex.Cr.App.1992). The Supreme Court held in
Daubert that scientific expert testimony must be relevant and reliable to
be admitted.  In  Kelly, the Texas Court of Criminal Appeals
established the following three-part test for determining the reliability of
scientific evidence:  (1) the underlying
scientific theory must be valid; (2) the technique applying the theory must be
valid; and (3) the technique must have been properly applied on the occasion in
question. Kelly v. State, supra at 573; see TEX.R.EVID. 702.  The burden is upon the proponent of the
evidence to prove by clear and convincing testimony that the evidence meets that
test. Kelly v. State, supra at 572-73. We will not disturb a
trial court=s
decision to admit expert testimony absent an abuse of discretion. Hinojosa
v. State, 4 S.W.3d 240, 251
(Tex.Cr.App.1999). 

Hambrick testified that he has been employed as a
criminalist/chemist with the DPS crime laboratory in Midland for over 13
years.  His duties included analyzing
unknown testing samples that are suspected to contain controlled
substances.  He obtained a bachelor of
science degree in chemistry from Sul Ross State University.  He has also undergone advanced training in
chemistry at Sul Ross and the DPS laboratory in Austin.  

Hambrick testified that he performed two types of
tests on testing samples that are suspected of containing controlled
substances.  The first was a screening
test to determine the group of controlled substances which may be present in
the sample.  When testing for the
presence of heroin, Hambrick initially used a marquee test wherein he looked
for a color reaction after a chemical reagent was applied to the testing
sample.  The second test involved using
an instrument which performed gas chromatograph mass spectrometry.  The instrument first separated the testing
sample into its component parts by using heat to separate the molecules in the
sample.  It then identified the
substances which are contained in the testing sample by identifying the
molecules.  Hambrick testified that these
tests were performed in all of the DPS laboratories in Texas to identify
controlled substances.  He also stated
that they were used on a national level to identify suspected controlled
substances.

The State elicited testimony from Hambrick which
detailed his specialized training and extensive experience in analyzing
controlled substances.  Hambrick=s testimony addressed the acceptance of
the tests he performed within the scientific community as valid methods for
determining the composition of suspected controlled substances.  Based upon this testimony, the trial court
did not abuse its discretion by denying appellant=s
objection to the reliability of Hambrick=s
testimony.  Appellant=s first issue overruled.








In his second issue, appellant argues that the
trial court erred in admitting the substance which Hambrick tested and Hambrick=s report containing the test results.   Appellant contends that these items were
inadmissible because the State did not adequately establish the chain of
custody for the substance.  It does not
appear that appellant raised the argument of an inadequate chain of custody as
a ground when objecting to the admission of these evidentiary items.  Accordingly, appellant has failed to preserve
error on this ground.  See TEX.R.APP.P.
33.1(a)(1)(A).

Moreover, even if appellant preserved error on his
chain of custody complaint, the trial court did not abuse its discretion in
admitting these items of evidence.  We
review the trial court=s
decision to admit evidence under an abuse of discretion standard. Weatherred
v. State, 15 S.W.3d 540, 542 (Tex.Cr.App.2000).  If evidence is properly identified, questions
concerning care and custody typically go to the weight, not the admissibility,
of the evidence.  Foster v. State,
101 S.W.3d 490, 498 (Tex.App. - Houston [1st Dist.] 2002, no pet=n). 
Proof of the beginning and the end of the chain of custody will support
admission of the evidence unless there is a showing of tampering or alteration.
 Durrett v. State, 36 S.W.3d 205,
208 (Tex.App. - Houston [14th Dist.] 2001, no pet=n).
The chain of custody is established if an officer testifies that he seized the
item of physical evidence, tagged it, placed an identifying mark on it, placed
it in evidence storage, and retrieved the item for trial. Lagrone v. State,
942 S.W.2d 602, 617 (Tex.Cr.App.), cert. den=d,
522 U.S. 917 (1997). When evidence is sent to a laboratory for analysis, the
proponent must introduce testimony showing that the laboratory handled the
evidence in the same way to conclusively establish the chain of custody.  See Medellin v. State, 617 S.W.2d 229, 232
(Tex.Cr.App.1981). When the State completes the chain of custody from the
initial collection of the evidence to inside the laboratory, most questions
concerning care and custody, including gaps and minor theoretical breaches, go
to the weight of the evidence, not its admissibility. See Medellin v. State,
supra at 232; Silva v. State, 989 S.W.2d 64, 68 (Tex.App. - San
Antonio 1998, no pet=n).

After he purchased the substance from appellant,
Officer Herman returned to the Midland Police Department.  He weighed the substance, placed it in a
sealed envelope, and then stored it in the narcotics unit safe.  Officer Herman subsequently removed the
substance for the purpose of transferring it to the Midland Police Department=s evidence room.  He deposited the substance in a drop-off
evidence locker for it to be retrieved by evidence room personnel at a later
date.








Ronny L. Wetterman, a retired property and
evidence clerk for the Midland Police Department, testified that he retrieved
the substance which Officer Herman stored in the drop-off evidence locker for
storage in the evidence room.  He
subsequently transported the substance to the DPS Laboratory in Midland for
analysis.  Wetterman later retrieved the
substance from the laboratory after it was analyzed.

Hambrick testified that each piece of evidence
delivered to the laboratory is assigned a unique case number.  The item is checked at delivery to determine
if it was delivered in a sealed condition. 
Hambrick testified that, in this instance, the testing sample was
delivered to him by Wetterman on October 15, 1999, in a sealed envelope.  The item was then placed into the DPS
laboratory=s vault
for storage until it was analyzed at a later time.  Hambrick performed the analysis on the
testing sample on October 25, 1999. 
After he analyzed the testing sample, he returned it to the laboratory=s vault for storage until the Midland
Police Department subsequently retrieved it.      The
testimony from Officer Herman, Wetterman, and Hambrick established the beginning
and the end of the custody chain. 
Furthermore, Hambrick testified that the envelope containing the
evidence was sealed at the time he retrieved it for testing.  The trial court did not abuse its discretion
in admitting the testing sample and the report generated from the testing.  Appellant=s
complaints about purported gaps in the custody chain are matters pertaining to
the weight, rather than the admissibility, of the evidence.   Appellant=s
second issue is overruled.

Appellant asserts in his third issue that the
trial court erred in failing to include a definition of reasonable doubt in the
court=s charge
to the jury.  In Geesa v. State,  820 S.W.2d 154 (Tex.Cr.App.1991), the Texas
Court of Criminal Appeals adopted a definitional instruction for Areasonable doubt@
and required that the instruction be submitted to the jury in all criminal
cases.

See Colbert v. State, 108 S.W.3d 316, 318
(Tex.Cr.App.2003).  The court
subsequently overruled Geesa=s
requirement for the trial court to instruct the jury on the definition of
reasonable doubt in Paulson v. State, 28 S.W.3d 570, 573
(Tex.Cr.App.2000).  The court concluded
in Paulson that the Geesa definition was confusing and logically
flawed.   Paulson v. State, supra at
573.  








Appellant acknowledges that the holding in Paulson
is the controlling authority with respect to his contention.  He urges that this court decline to follow Paulson
because it purportedly places the exercise of a constitutionally-mandated protection
in the hands of the prosecutor.[3]   As noted in Paulson, the United
States Supreme Court determined in Victor v. Nebraska, 511 U.S. 1, 5
(1994), that the United States Constitution does not require trial courts to
instruct the jury regarding the meaning of reasonable doubt as a matter of
course.  Paulson v. State, supra at
573.  Accordingly, we will follow  Paulson.  Appellant=s
third issue is overruled.

Appellant=s
fourth  issue addresses the admission of
State=s
Exhibits Nos. 5, 7, and 8 during the punishment phase.  State=s
Exhibit No. 5 consisted of a Apen
packet@
detailing a 1981 conviction for attempted aggravated kidnapping with intent to
inflict body injury arising out of Cause No. CRB-8498 in the 142nd District
Court of Midland County.  State=s Exhibit No. 5 did not contain
photographs of the person convicted. 
However, it contained a document identifying  the person convicted as AAlfredo Castillon Lopez@ with a date and place of birth of
February 26, 1953, in Martin County. 
State=s Exhibit
No. 5 also contained documents ordering the commitment of  AAlfredo
Castillon Lopez@ for a
1978 conviction for the offense of aggravated assault arising from Cause No.
6,957 in the 142nd District Court of Midland County.  The order of commitment was accompanied by an
order revoking probation in Cause No. 6,957.  
State=s Exhibit
No. 5 indicated that AAlfredo
Castillon Lopez@ was
confined to serve the  sentence imposed
in Cause No. 6,957 at the same time as the sentence imposed in Cause No.
CRB-8498.

State=s
Exhibit No. 7 consisted of an arrest record for AAlfredo
Castillon Lopez@ arising
from an arrest occurring on October 23, 1978.[4]    State=s
Exhibit No. 7 listed the date and place of birth for  AAlfredo
Castillon Lopez@ as
February 26, 1953, in Stanton.[5]  State=s
Exhibit No. 8 consisted of two photographs taken of an individual.   Margaret Dutchover, the chief custodian of
records for the Midland County Sheriff=s
Office, described State=s
Exhibit No. 7 as a booking sheet prepared in connection with the arrest of  AAlfredo
Castillon Lopez@ on
October 23, 1978.  She described State=s Exhibit No. 8 as booking photographs
taken of him at the time of his arrest on October 23, 1978.  








The State offered State=s
Exhibits Nos. 7 and 8 in an effort to provide information identifying appellant
as the person ordered to be confined in Exhibit No. 5.  Specifically, the State relied on the same
date and place of birth being listed in State=s
Exhibits Nos. 5 and 7.  The State relied
upon State=s Exhibit
No. 8 to identify appellant as the same person that is the subject of  State=s
Exhibits Nos. 5 and 7.  

Appellant asserts that the trial court erred in
admitting State=s Exhibit
No. 5 because the State failed to prove it was a business record.  However, appellant did not object to the
admission of State=s Exhibit
No. 5 on this basis.  Appellant has not
preserved error with respect to his business record contention.[6]  See Rule 33.1(a)(1)(A).  Moreover, the documents comprising State=s Exhibit No. 5 were accompanied by a
document certifying them as official records of the Texas Department of
Criminal Justice - Institutional Division. 
Certified copies of a judgment and sentence are admissible as
self-authenticated public records. See TEX.R.EVID. 901(b)(7) and 902(1)
& (4). Accordingly, State=s
Exhibit No. 5 was not dependent on the business records exception for its
admissibility.  See TEX.R.EVID.
803(6).  The public records exception of
the hearsay rule applied to the documents. 
See TEX.R.EVID. 803(8). 
Furthermore, the certification of the documents as copies of official
public records made them admissible without additional testimony. See
Rule 902(4).  

Appellant also contends that the State failed to
establish the authenticity of the photographs contained in State=s Exhibit No. 8.  Dutchover testified that the photographs
accurately depicted the person arrested based upon her comparison of the
photographs to the negatives in her file.[7]  Appel-lant contends that Dutchover lacked
sufficient expertise to offer her lay opinion regarding this comparison.  We disagree with this assertion.  A photograph may be authenticated by the
testimony of any witness who has personal knowledge that the particular item
accurately represents the scene or event it purports to portray.  Drone
v. State, 906 S.W.2d 608, 611 (Tex.App. - Austin 1995, pet=n ref=d).   Additionally, Dutchover=s testimony was admissible as opinion
evidence from a lay witness under TEX.R.EVID. 701 because it was rationally
based on the perception of the witness and it was helpful to the determination
of a fact in issue.  








Appellant objected to the admission of State=s Exhibits Nos. 5, 7, and 8 on the
basis that the State failed to proved that they related to appellant.  Although the evidence is attenuated, State=s Exhibits Nos. 5, 7, and 8, provided
the jury with information with which it could have identified appellant as the
person confined for the offenses set out in State=s
Exhibit No. 5.  The trial court did not
abuse its discretion in admitting these matters into evidence. Appellant=s fourth issue is overruled.

Appellant=s
fifth issue challenges the trial court=s
admission of two pen packets containing records of two prior felony convictions
which the State alleged for enhancement purposes.  The State offered the pen packets into
evidence during the punishment phase as self-authenticated documents.  The first pen packet, State=s Exhibit No. 3, contained documents
pertaining to a 1994 conviction for tampering with government records arising
from Cause No. B-23,326 in the 161st District Court of Ector County.  The second pen packet, State=s Exhibit No. 4, contained documents
pertaining to a 1989 conviction for 3rd degree theft of property arising from
Cause No. W-CRB-15,404 in the 238th District Court of Midland County.  Both of the pen packets contained photographs
of the individual convicted for the respective offenses.  The pen packets were accompanied by documents
certifying them as official records of the Texas Department of Criminal Justice
- Institutional Division.

Appellant objected to the admission of State=s Exhibits Nos. 3 and 4 solely on the
basis that the State failed to establish that they were admissible under the
business records exception.  Contrary to
appellant=s
argument, State=s
Exhibits Nos. 3 and 4 were not dependent on the business records exception for
their admissibility.  See Rule
803(6).  The public records exception of
the hearsay rule applied to the documents. 
See Rule 803(8). 
Furthermore, the certification of the documents as copies of official
public records made them admissible without additional testimony.  See Rule 902(4).  Appellant=s
fifth issue is overruled.








In his sixth issue, appellant complains that the
trial court purportedly made an improper comment on the weight of the
evidence.  See TEX. CODE. CRIM.
PRO. ANN. art. 38.05 (Vernon 1979).  He
bases this complaint upon the following statement made by the trial court in
overruling appellant=s
objection to Hambrick=s
qualifications to testify as an expert: AI=ll overrule the objection and let
him testify as an expert.@
(Emphasis added)  However, appellant did
not make  an objection to the trial court=s statement.[8]  In order to complain on appeal about an
improper comment on the weight of the evidence, an objection to the comment
must be made in the trial court.  See Rule
33.1(a)(1)(A).  Appellant=s sixth issue is overruled because
appellant did not preserve his contention that the trial court made an improper
comment on the evidence.

Appellant=s
seventh issue concerns the use of shackles and handcuffs to restrain him during
trial.  He raised this issue prior to
voir dire outside of the jury panel=s
presence.  The trial court acknowledged
on the record that appellant was restrained by leg shackles and handcuffs
connected to a waist chain.  Defense
counsel protested the use of the handcuffs on the basis that they would
restrict appellant=s ability
to assist counsel in the defense of the case. 
Defense counsel additionally asserted that the jury=s observation of the restraints would
be unduly prejudicial to appellant.

The trial court overruled appellant=s request to have the restraints
removed.  In issuing this ruling, the
trial court stated that it was concerned about an allegation that appellant had
injured a jailer prior to trial.  The
trial court further stated that it would provide opportunities for appellant to
confer privately with defense counsel as a substitute for appellant not being
able to write out questions or comments for counsel to review. 

Texas courts have permitted criminal defendants to
be restrained in the presence of the jury when there is a showing of
exceptional circumstances which manifest a need for the restraint of the accused.  Long v. State, 823 S.W.2d 259, 282-83
(Tex.Cr.App.1991), cert. den=d,
505 U.S. 1224 (1992).  Restraints have
been authorized in trials where the defendant has posed a threat to others,
posed a threat to himself, interfered with court proceedings, or attempted to
escape.  Culverhouse v. State, 755
S.W.2d 856, 859-60 (Tex.Cr.App.), cert. den=d,
488 U.S. 863 (1988).  The trial court=s decision regarding the use of
restraints is reviewed under an abuse of discretion standard.  Cooks v. State, 844 S.W.2d 697, 722
(Tex.Cr.App.1992), cert. den=d
, 509 U.S. 927 (1993).








The record does not reflect that the trial court
abused its discretion in permitting appellant to be restrained during
trial.  The trial court complied with the
requisite procedural safeguards by conducting a hearing on the matter outside
of the presence of the jury.  See Gammage
v. State, 630 S.W.2d 309, 314 (Tex.App. - San Antonio 1982, pet=n ref=d).  The trial court clearly stated the reason for
its ruling at the hearing.  See Long
v. State, supra at 282.  Furthermore,
the reason stated by the trial court B
with regard to an allegation that appellant had injured someone B constituted a permissible basis for
allowing the restraints.  Appellant=s seventh issue is overruled.

In his eighth issue, appellant attacks the
admission of State=s
Exhibits Nos. 5, 7, and 8.  The
complaints which appellant raises in support of this issue are essentially the
same complaints he raised in his fourth issue. 
Our ruling on appellant=s
fourth issue is dispositive of his eighth issue.  Appellant=s
eighth issue is overruled.

The judgment of the trial court is affirmed.

 

W. G. ARNOT, III

CHIEF JUSTICE

 

June 16, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.











     [1]The
jury made a finding of Atrue@ to two prior felony convictions alleged by the State
for enhancement purposes.





     [2]Appellant
does not attack the sufficiency of the evidence supporting his conviction.





     [3]Appellant
bases his argument on a statement in Paulson wherein the court stated
that the inclusion of a definition of reasonable doubt would not constitute
reversible error if both the State and the accused agreed to its
inclusion.  Paulson v. State, supra at
573.





     [4]It
appears that State=s Exhibit No. 9 constitutes the record for the arrest
of AAlfredo Castillon Lopez@ in
connection with the offense for which he was convicted in Cause No. 6,957.





     [5]The
trial court took judicial notice that Stanton is located in Martin County.





     [6]Appellant
also attacks the admission of State=s Exhibit
No. 7 on the grounds that it was not a complete business record.  Appellant did not preserve error on this
contention because he did not object to the admission of this evidentiary item
on that basis.





     [7]No
evidence was offered regarding the source of State=s Exhibit No. 8. 
The photographs clearly depict a male either wearing or holding a sign
with the following identifying information:  
A Sheriff=s Dept. Midland Texas, 12446, [10/24/78].@  The
corresponding arrest record (State=s Exhibit
No. 7) lists an AID Number@ of A12,446.@





     [8]We
do not express an opinion as to whether or not the trial court=s statement constituted an impermissible comment on the
weight of the evidence.