No. 04-00-00826-CR



Carlos GUERRERO,


Appellant



v.



The STATE of Texas,


Appellee



From the 386th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CR-4057


Honorable Laura Parker, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: November 21, 2001


AFFIRMED

 Carlos Guerrero pled not guilty to murder but was found guilty by a jury and sentenced to
life in prison and a $10,000 fine. Carlos was 16 at the time of the offense, but was certified to stand
trial as an adult. On appeal, Carlos contends his trial counsel was ineffective and the evidence was
legally and factually insufficient to convict him. We affirm.


Factual & Procedural Background

 Margie Guerrero lives in one side of a duplex at 603 Grosvenor Street in San Antonio. On
the night of the shooting, her four teenaged and young adult children--Sonny, Johnny, Carlos, and
Sandy--were at the house for a cook-out. The family was joined by several friends: brothers Andy
and Lupio Cardenas, Andrew Sepulveda, and Richard de la Rosa. In addition, Randy and Linda
Rodriguez, their neighbors in the other half of the duplex, came over for the evening.

 Just down the street, the Navarro family was having their own cook-out. Greg Navarro, his
brother Jesse (the deceased), and Greg's girlfriend, Jennifer Valdez, lived at 535 Grosvenor Street.
They, too, had friends and family over: William Dixon, Scott Purgason, Donovan Casares, Jessica
Trevino, Eloisa Campa, Isaac Saldivar, Samantha Serna, Chris Rodriguez, and Chris's sister, Stacey
Rodriguez. 

 The two groups gathered that night did not get along with one another. There is some
indication they may have belonged to or been associated with rival gangs, but the chief source of
friction was the relationship between two members of the disparate groups, Johnny Guerrero and
Stacey Rodriguez. The two were dating, but this did not bring the factions closer together because 

Stacey's brother, Chris, believed Johnny was mistreating his sister.

 A cross street and a house separate the Navarro and Guerrero properties, but the intervening
house is set far back from the curb, leaving a clear line of sight between the two homes. Because
most of the activity that night took place in the homes' respective front yards, the groups had a
continuous view of each other. As the evening progressed and the level of intoxication rose, the two
groups began to shout at one another, hurling insults, taunts, and challenges back and forth. This
verbal scrapping escalated into a street fight after Randy Rodriguez dared the Navarro group to fight
the Guerrero group. At first, it appeared the fight would be over quickly. Then, Sandy Guerrero
struck Greg Navarro over the head with a two by four; soon after, Sandy was stabbed and a more
violent round of fighting ensued. At this point, the two factions had armed themselves with pieces
of wood, baseball bats, bricks, screwdrivers, and kitchen knives. Isaac Saldivar had a gun he fired
into the air several times. According to various witnesses, the scene was one of mass confusion and
chaos, with people running, screaming, and fighting. Andy Cardenas had left the party but returned
when a friend called to tell him the two factions were fighting. Carlos had also left the party for a
short while but stormed back when his aunt told him his sister Sandy had been stabbed. Carlos spent
some moments inside the Guerrero house unjamming a .22 caliber rifle, then came outside and fired
the rifle. When Jesse collapsed after being shot, many of the participants fled the scene. Carlos,
Andy, and Lupio left together. By the time the police arrived, three persons needed medical
treatment for serious stab wounds and Jesse had died of his gunshot wound. 

 The police gathered weapons, spent shell casings, and bloody clothing from the scene. They
did not find the murder weapon, but recovered a .22 caliber long-rifle bullet from Jesse's body.
Although several people were tested for gunshot residue, only the deceased had gunshot residue on
his hands. The police did not test Carlos, nor was he initially considered a suspect. At trial, the
eyewitnesses described the events from their individual vantage points; most testified they did not
know who shot Jesse. Andy Cardenas testified he saw Carlos with a rifle, heard the shot, and saw
Jesse fall. Lupio Cardenas also testified he saw Carlos with the rifle and heard the shot. Randy
Rodriguez apparently witnessed the shooting, but he did not testify. Randy told Carlos the shot
Carlos fired had hit Jesse in the neck; he said this to Carlos in front of Andy, who repeated it at trial.
This testimony came in without objection.


Assistance of Counsel


 In point of error one, Carlos contends his trial counsel rendered ineffective assistance by
failing to object to admission of an "extraneous extra-judicial statement." He contends the statement
was made by an unindicted accomplice, and that he was deprived of the right to confront this
witness. In point of error two, he contends counsel was ineffective for not requesting an accomplice
witness jury instruction.

 Standard of Review

 To prove ineffective assistance of counsel, a convicted defendant must show (1) trial
counsel's performance was deficient, in that counsel made such serious errors he or she was not
functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such
a degree that the defendant was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668, 690
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting Strickland
standard for resolving allegations of ineffective assistance of counsel under both federal and state
constitutions). The constitutional right to effective assistance does not entitle a defendant to errorless
counsel. Ex parte Cruz, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). In this connection, a strong
presumption exists that counsel rendered adequate assistance and made all significant decisions in
the exercise of reasonable professional judgment. Strickland, 466 U.S. at 689; Banks v. State, 819
S.W.2d 676, 681 (Tex. App.--San Antonio 1991, pet. ref'd).

 An isolated instance of a failure to object to inadmissible evidence does not necessarily
render counsel ineffective. See Ewing v. State, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977).
Instead, we judge whether Carlos meets the Strickland standard by reviewing the "totality of the
representation" rather than isolated acts or omissions. See Wilkerson v. State, 726 S.W.2d 542, 548
(Tex. Crim. App. 1986); Banks, 819 S.W.2d at 681. Carlos must overcome the presumption that,
under the circumstances, trial counsel's actions might be considered sound trial strategy. See
Strickland, 466 U.S. at 689; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).
Moreover, we apply the test at the time of trial without the benefit of hindsight. Strickland, 466 U.S.
at 689; Jackson, 877 S.W.2d at 771. Whether an act or omission of counsel is reasonable is
determined by objective standards. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
We sustain allegations of ineffective assistance only if firmly founded in the record, which
affirmatively demonstrates the alleged ineffectiveness. McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996). Even under this stringent burden, however, ineffectiveness of counsel is
"not a specter" and it exists when the effect of trial counsel's errors undermines the concept of a fair
trial. Green v. State, 899 S.W.2d 245, 247-48 (Tex. App.--San Antonio 1995, no pet.).

 Accomplice Witness Instruction

 Carlos contends the facts clearly demonstrate that Randy Rodriguez, Lupio Cardenas, and
Andy Cardenas were all accomplice witnesses. All three were present at the shooting, Andy and
Lupio saw Carlos attempting to unjam his rifle, all three knew Carlos was upset and were outside
when he fired the rifle, and Andy, Lupio, and Carlos fled the scene together after Randy suggested
it would be a good idea for them to leave before the police arrived.

 A person is an accomplice if he participates before, during, or after the commission of a
crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense.
Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999). Mere presence does not make one an
accomplice, nor does knowing about a crime and failing to disclose it or even concealing it. Id. The
Medina court held that gang membership, combined with presence at or concealment of a crime
associated with gang activity, was not enough to support a finding of accomplice status. Id. To be
an accomplice witness, there must be some evidence of an affirmative act on the witness's part to
assist in the commission of the offense. Kunkle v. State, 771 S.W.2d 435, 440 (Tex. Crim. App.
1986; see also Williams v. State, 995 S.W.2d 754, 759 (Tex. App.--San Antonio 1999, no pet.).

 Randy, Lupio, and Andy were present at the scene. Andy and Lupio fled with Carlos.
However, there is no evidence in the record to show they were gang members or attempted to
conceal the crime. More importantly, none of them committed any overt act to assist in the
commission of the murder. As in Medina, the evidence here is not sufficient to support a finding of
accomplice status for any of the three. Therefore, an accomplice witness instruction was not
warranted and counsel did not err by not seeking such an instruction. 

 We overrule point of error two.

 Hearsay

 Hearsay is a statement other than one made by the declarant while testifying at trial that is
offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801 (d). Hearsay is not
admissible unless it falls into an exception provided by statute or the Rules of Evidence. Tex. R.
Evid. 802. Carlos argues counsel was ineffective because she did not object during the following
exchange between the prosecutor and Andy Cardenas, a 13-year-old witness:

 State: Do you ever remember Randy telling Carlos anything?

 Andy: [Randy] said [Carlos] shot [Jesse].

 State: And did [Randy] ever tell -- did he tell Carlos where [Carlos] shot [Jesse]?

 Andy: I think on the neck.

 Relying principally on Bruton v. United States, 391 U.S. 123, 127 (1968), Carlos contends
this testimony was particularly damaging hearsay, arguing it was inherently unreliable because it was
made by an accomplice witness whom he was denied the right to confront and cross-examine. In
Bruton, the Supreme Court held that the right to confront a witness is violated when the confession
of a non-testifying co-defendant that incriminates the defendant is admitted. Id. Here, however, we
have neither a confession nor co-defendants. We have held, based on the factors enumerated in the
Medina decision, that neither Randy nor Andy was an accomplice. For their testimony to be
considered inherently unreliable, they must have been accomplices. See Lilly v. Virginia, 527 U.S.
116, 131 (1999). Accordingly, the confrontation clause argument is inapplicable here.

 Although the State argues the question put to Andy was not designed to elicit more than a
"yes" or "no" response, Andy's testimony about what Randy said is clearly hearsay. It was an out-of-court statement offered to prove the truth of the matter--that Carlos shot Jesse. Hence, it was not
admissible unless it was an exception to the hearsay rule. There are several exceptions to the hearsay
rule when the availability of the declarant (here, Randy) is immaterial. See Tex. R. Evid. 803. Had
counsel objected, it is likely that the State would have argued the statement was an exception to the
hearsay rule, either because (as they argue on appeal) it was a "present sense impression" or because
it was an "excited utterance." A present sense impression is a statement describing or explaining
an event made while the declarant was perceiving the event, or immediately thereafter. See Tex. R.
Evid. 803(1). An excited utterance is a statement relating to a startling condition made while the
declarant was under the stress of excitement caused by the event. See Tex. R. Evid. 803(2).

 Randy's pointing out to Carlos that Carlos had just shot Jesse in the neck could qualify as
either a present sense impression or an excited utterance, and would thus have been admissible. See
Brooks v. State, 990 S.W.2d 278, 286-87 (Tex. Crim. App. 1999). Although counsel may not have
objected because she recognized that a hearsay objection would apply, it would have been better had
she objected. This error, however, was an isolated omission, and we may not hold that counsel was
ineffective based solely on this. See Ewing, 549 S.W.2d at 395. Rather, we examine the record in
light of the first prong of the Strickland standard and evaluate the totality of the representation to
determine if counsel was ineffective. See Banks, 819 S.W.2d at 681. 

 The record reflects that counsel provided effective representation. She filed and obtained
rulings on several pre-trial motions, actively represented Carlos at the certification hearing, hired an
investigator, and successfully kept out Carlos's prior convictions and extraneous offenses. Her voir
dire of the jury was thorough. During the course of the trial, counsel made numerous objections,
most of which were sustained. The defense of sudden passion was included in the jury charge. After
the trial was over, and before she withdrew as Carlos's attorney, counsel preserved his right to appeal
by moving for a new trial, filing a pauper's oath, asking for appointment of appellate counsel, timely
filing a notice of appeal, and requesting preparation of the record. Based on the totality of counsel's
representation, we hold that she rendered effective assistance. 

 We overrule point of error one.

Sufficiency of the Evidence


 In point of error three, Carlos contends the evidence was legally insufficient to support his
conviction. In point of error four, he challenges the factual sufficiency of the evidence. 

 Standard of Review

 When reviewing the evidence for legal sufficiency, an appellate court considers the evidence
in the light most favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). The appropriate inquiry is whether, after viewing the evidence in this light, any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. Silva v.
State, 989 S.W.2d 64, 68 (Tex. App.--San Antonio 1998, no pet.). This standard applies to both
direct and circumstantial evidence cases. See Chambers v. State, 711 S.W.2d 240, 245 (Tex. Crim.
App. 1986). The verdict will be overturned only if it is irrational or unsupported by proof beyond
a reasonable doubt. Silva, 989 S.W.2d at 68; see also Muniz v. State, 851 S.W.2d 238, 246 (Tex.
Crim. App. 1993).

 When reviewing the factual sufficiency of the evidence, an appellate court views the evidence
without the prism "of in the light most favorable to the prosecution" and sets aside the verdict only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.
Clewis, 922 S.W.2d at 129. The appellate court should be appropriately deferential to the fact
finder's determination so as to avoid substituting the appellate court's decision for the jury's. Id.
at 133; De Los Santos v. State, 918 S.W.2d 565, 569 (Tex. App.--San Antonio 1996, no pet.).

 Evidence Adduced at Trial

 As Carlos notes, there were many witnesses who testified, and their stories were somewhat
contradictory. Carlos's aunt and uncle testified he was at their home during part of that evening, but
they never went to the Guerrero's house that night and did not know who shot Jesse. Samantha
Serna, Jesse's girlfriend, was inside the house and did not hear or see the shooting. Donovan
Casares testified the shooting came from the Guerrero house, but said he did not see who was firing.
Chris Rodriguez testified he did not see anyone with a gun and could not hear where the shots came
from. Isaac Saldivar had a gun of his own that he fired into the air a short time before shots came
from the Guerrero house. When he heard shots coming from the Guerrero house, he tried to shoot
back, but his gun misfired. William Dixon testified he heard shots he thought were coming from the
Guerrero house, but did not see who fired the gun. Although the scene was chaotic, only two people
were firing guns and they were not being fired at the same time. Accordingly, those people who
heard the final shot were able to identify the source of the sound as coming from the Guerrero house.

The most informative testimony about who fired the shot that killed Jesse came from three people:
Greg Navarro, Andy Cardenas, and Lupio Cardenas.

 Greg testified that Sandy struck him in the head several times with a piece of wood;
afterwards he grabbed a knife from someone else and stabbed Sandy. After that, he did not see who
was shooting or who was shot. Greg's friends told him moments later it was his brother Jesse who
had been shot. Greg made a statement to the police, and was cross-examined on the basis of that
statement, but it was not admitted into evidence. On the night of the shooting, Greg identified
Carlos's brother Sonny as the shooter. At trial, however, he essentially recanted this statement,
testifying he told the police it was Sonny because when he yelled after the shooting, "Who did it?"
his friends said, "It was Sonny."

 Andy and Lupio Cardenas both identified Carlos as the shooter, although neither of the
brothers testified to actually seeing Carlos fire the fatal shot. After testifying that he saw Carlos
attempting to unjam the rifle, Andy further testified that he followed Carlos, who was carrying the
rifle, out of the house. He then heard one shot. When Andy, Lupio, and Carlos went back inside
after that shot was fired, Carlos was still carrying the rifle. Finally, when Andy was asked whether
Carlos ever admitted being the shooter, Andy said, "Yes." Lupio testified that he, too, saw Carlos
in the house trying to unjam the gun and said that Carlos was upset. He testified he followed Carlos
out of the house and watched Jesse come toward them, yelling something. He heard the gunshot and
saw Jesse fall, but he did not see Carlos fire the rifle.

 Because, out of eleven fact witnesses, only the two brothers identified Carlos as the shooter,
and neither actually witnessed Carlos fire the rifle, Carlos contends this demonstrates the jury's
verdict of guilty was manifestly unjust. The jury is the exclusive judge of the credibility of witnesses
and of the weight to be given their testimony. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim.
App. 2000). Reconciliation of conflicts in the evidence is within the exclusive province of the jury.
Id. The jury may choose to believe some testimony and disbelieve other testimony. Id. The jury
evidently believed from Andy and Lupio's testimony that Carlos shot Jesse, even though neither
actually saw the shooting. The testimony of those witnesses who had no idea who the shooter was
is not contradictory, merely uninformative. Only Greg Navarro's original statement to the police
identifying Sonny as the shooter was in direct conflict with Andy and Lupio's testimony, and Greg,
in effect, recanted his statement at trial. Whether his written statement or trial testimony was true
was also a question for the jury to resolve, and they apparently believed his testimony at trial.

 We hold the evidence was legally and factually sufficient to sustain the conviction. We
overrule points of error three and four. 

 We affirm the judgment.


 Catherine Stone, Justice

DO NOT PUBLISH